State v. Wellman.

---

THE STATE v. JOSEPH WELLMAN, Appellant.

Division Two, December 9, 1913.

1. **INFORMATION: Crime Against Nature.** In view of the constitutional provision declaring that the accused may demand "the nature and cause of the accusation against him," the information attempting to charge an accused with the detestable and abominable crime against nature denounced by Sec. 4726, R. S. 1909, as amended by Laws 1911, p. 198, should designate, at least in a general way, the acts by which the crime is committed.

2. ———: ———: **Sexual Intercourse.** The words "sexual intercourse" mean the actual contact of the sexual organs

of a man .and a woman, and an actual penetration into the body of the latter; and while they may be reasonably expanded to cover a lustful contact between the sexual organs of mankind with the sexual organs of beasts, accompanied by penetration, they cannot be held to embrace the sexual organs of one person and the nonsexual organs of another.

3. ————: ————: **Charging Sexual Intercourse With Mouth: Surplusage.** An information charging that defendant "did then and there unlawfully and feloniously commit the detestable and abominable crime against nature by then .and there having sexual intercourse with one Belle Shaffer with his mouth," contains an allegation that is grossly repugnant to the main charge, namely, "by then and there having sexual intercourse with Belle Shaffer;" and that repugnant charge cannot be rejected as surplusage without leaving the information without the name or any description of the party upon whom the crime was committed, and hence it is not cured by Sec. 5115, R. S. 1909. The information should have charged that defendant "did then and there unlawfully and feloniously commit the detestable and abominable crime against nature upon one Belle Shaffer, a female human being, by then and there inserting his mouth into the sexual organs and private parts of her, the said Belle Shaffer."

4. **EVIDENCE: No Objection.** To secure the exclusion of improper testimony there must be a timely objection, pointing out the reasons why it should not be received. If the objection is not made until after the testimony is received, and then no reason is assigned why it should not be admitted, its reception is not reversible error.

5. ————: **Reputation for Committing Similar Crimes.** Testimony that defendant had the reputation of committing the class of crimes for which he is on trial is not admissible. [Distinguishing State v. Beckner, 194 Mo. 281; State v. Pollard, 174 Mo. 607; and State v. Shields, 13 Mo. 236; and overruling so much of State v. Oliphant, 128 Mo. App. 252, as announces a different rule.]

6. ————: **Proof of Similar Crime by Rumor or Common Report.** Nor is it proper, where defendant is charged with committing a crime against nature upon a certain woman, to prove by rumor or common report that he had committed the crime against nature upon another woman. No one can meet a rumor face to face, and to admit such rumor or common report in evidence is to deny him the constitutional right "to meet the witnesses face to face."

7. ————: **Different Crime.** Nor is it proper, where defendant is charged with having committed the crime against nature,

State v. Wellman.

to prove that defendant had been guilty of the specific crime of adultery with another woman.

8. **FAILURE TO INSTRUCT:** Corroboration: Not Assigned in Motion for New Trial. A contention in appellant's brief that the trial court erred in failing to instruct the jury that the prosecutrix must be corroborated, since, if the crime against nature upon her was committed as charged, she consented to its commission, cannot be considered on appeal, if not specifically assigned in the motion for a new trial.

9. **REMARKS OF PROSECUTING ATTORNEY:** Unfair: Evidence of Other Crimes. The prosecuting attorney should never be allowed to appeal to the jury to convict the defendant because he has committed some other crime not in any way connected with the one for which he is being tried, or because his reputation is bad; and the remarks of the assistant prosecutor in this case, which are set out in paragraph five of the opinion, were not warranted by the evidence, and were highly prejudicial to defendant.

Appeal from Jackson Criminal Court.—*Hon. Ralph S. Latshaw,* Judge.

.REVERSED AND REMANDED.

*H. A. Owen, F. W. Paschal* and *C. B. Leavel* for appellant.

(1) The information filed fails to state a cause of action. The section of statute under which this case was tried is as follows: Sec. 4726, R. S. 1909. The statute is in derogation of common law, and must be strictly construed. At common law sodomy is the carnal copulation by human beings with each other against nature or with a beast, in which sense it includes crimes against nature, bestiality and buggery. In its narrower sense, sodomy is the carnal copulation between two male beings *per anum.* At common law sodomy could not be committed except by penetration of the organ into the person or body of another. The statute enlarges the definition of the crime so as to include the use of the mouth, but it does not exclude from the common law meaning that penetration is a necessary ele-

ment of the crime. The defendant could not penetrate the female organ with his mouth, and therefore the offense charged under the statute cannot come within the meaning of sexual intercourse as known to the common law. The act must be *per anum*. Prindle v. State, 31 Tex. Cr. App. 551. Penetration is an essential element at common law. State v. Vickman, 52 La. Ann. 1921; Green v. State, 79 S. W. (Tex. Cr. App.) 304; Cross v. State, 17 Tex. App. 476; Commonwealth v. Thomas, 1 Va. Cas. 307, 12 Coke, 37; Foster v. State, 1 Ohio Cir. Ct. 467. The information states that the defendant had carnal knowledge of the prosecutrix by the use of his mouth and tongue. The charge is in itself an impossibility. It was not sufficient to apprise the defendant of the nature of the offense with which he was charged. It describes the offense against nature by defining it as having sexual intercourse with the prosecutrix with the mouth. Sexual intercourse can only be had by persons or beings of the opposite sex, and with the sexual organs. The statute does not make sexual intercourse a crime, and it is impossible in nature, a fact known to all mankind, that sexual intercourse cannot be had with the mouth. (2) The evidence of the prosecutrix is utterly unworthy of belief. (3) The court did not instruct on all the law of the case, as by statute he is required to do so. If a crime had been committed against the prosecurtix, her testimony shows that she was a willing participator in the crime, and as such was equally guilty with the defendant, and her testimony, uncorroborated, should not have convicted him, and the court should have so instructed the jury. In a criminal prosecution it is the duty of the court to give all necessary instructions, whether they are requested or not. State v. Branstetter, 65 Mo. 149; State v. Palmer, 88 Mo. 568; State v. Hensen, 106 Mo. 66; State v. Nelson, 118 Mo. 124; State v. Rufus, 149 Mo. 406; State v. Brugdorf, 53 Mo. 67; State v. Wilkins, 221 Mo. 450.

(4) The court permitted the prosecuting attorney to continually make slurring remarks concerning the defendant and concerning the witnesses of the defendant, during the introduction of testimony, over the objections and exceptions of the defendant, and the court, in ruling on objections offered by defendant, many times, as shown in the statement of evidence herein, made comments that were calculated to and undoubtedly did prejudice the minds of the jury. (5) The court permitted Mr. Curtin, the public prosecutor, against the objections and exceptions of defendant, in his argument to the jury, to make many statements outside the record concerning the defendant, and to call the defendant vile and abusive epithets, all calculated to prejudice the minds of the jury against the defendant and his testimony.

*John T. Barker,* Attorney-General, and *Ernest A. Green,* Assistant Attorney-General, for the State.

(1) The information is not attacked anywhere in the record except in the motion in arrest of judgment and we shall not dwell upon the question of its sufficiency as it charges the offense in the language of the statute and is in approved form. Laws 1911, p. 198; Sherwood's Commentaries on Crim. Law, chap. 63, p. 515; 2 Chit. Crim. Law, p. 49; Kelley's Crim. Law and Prac. (3 Ed.), sec. 936, p. 838. (2) The State had proof upon everything required to constitute the offense and to fix the venue, and under appropriate instructions the jury returned a verdict of guilty. This court under such circumstances will not convert itself into a trier of facts and undertake to find a different result from that of the jury. State v. Wilkins, 221 Mo. 444; State v. Matthews, 202 Mo. 147; State v. McCullough, 171 Mo. 574; State v. Tetrick, 199 Mo. 100; State v. Williams, 199 Mo. 137; State v. Dilts, 191 Mo. 665; State v. Duesenberry, 112 Mo. 293. (3) There was no error in admitting the testimony of Jacob Fromson

with reference to the defendant's general reputation for comitting this particular character of crime. State v. Oliphant, 128 Mo. App. 261; State v. Shields, 13 Mo. 236; State v. Beckner, 194 Mo. 281; State v. Pollard, 174 Mo. 607. However, in any event, the ruling excepted is not subject to review, as no objection was made until after the question had been answered. Defendant waived his right to have the testimony excluded by thus waiting until he saw that the answer to the question was unfavorable. Stewart v. Watson, 133 Mo. App. 44. (4) The motion for a new trial assigns improper conduct on the part of the prosecuting attorney. The remarks complained of in the tenth ground of his motion for a new trial cannot be reviewed, as they are not set forth therein. If defendant wishes to have remarks of the prosecuting attorney reviewed in the appellate court, he must set them out in his motion for a new trial. State v. Miles, 199 Mo. 547. No request was made by defendant's counsel for the court to rebuke the prosecuting attorney for referring to Ida M. Sours as a prostitute. Furthermore, there was no exception taken to the language used by the prosecuting attorney. Unless the defendant asks the trial court to rebuke the prosecuting attorney for improper remarks made, and excepts to the court's failure to do so, the propriety of such remarks or of such ruling, though objected to at the time, cannot be considered an appeal. State v. Chenault, 212 Mo. 137; Champagne v. Hanley, 189 Mo. 709; State v. Valle, 196 Mo. 29. With reference to the remark complained of in the fifteenth ground of defendant's motion for a new trial, there was nothing improper in what the prosecuting attorney said. Such testimony had been introduced for the purpose of affecting defendant's credibility. But it even if there had been, there was no request made for the court to rebuke the prosecuting attorney and no exception taken to the failure of the court to do so. State v. Rasco, 239 Mo. 579; State v. McMullin, 170 Mo. 632;

State v. Murphy, 201 Mo. 691; State v. Harvey, 214 Mo. 411.

BROWN, P. J.—Convicted of the crime against nature as defined by the Laws of 1911, p. 198. defendant appeals from a judgment of the criminal court of Jackson county sentencing him to a term of three years in the penitentiary. The following is a summary of the evidence.

During the months of December, 1912, and January, 1913, the defendant kept a rooming house in Kansas City, Missouri, which house he had operated for five years. A few doors from defendant's rooming house was a jewelry store owned by one Louie Shaffer, in which store defendant was employed as an optician. In the same store was employed one Belle Shaffer, a sixteen-year-old sister of Louie Shaffer. Belle Shaffer testified that during the absence of her brother from the store defendant made love to her; kissed her, made her some small presents, and asked her to marry him; that he told her that her brother was going to fail in business and he would take care of her.

That defendant requested her to go with him to a room on Union Avenue in Kansas City, where he would tell her an important secret about her brother's jewelry business, and that having gained her confidence she went with him as requested. That when they entered the room defendant locked the door and solicited her to have sexual intercourse with him; that she refused, and that he then threw her down on a bed, put his head under her clothes and inserted his mouth into her private parts, keeping her in that position for about an hour. That at his request she met him outside the store almost every other day for a period of about two weeks, when they would go to his room and defendant would repeat this crime against nature. That defendant warned her that they would both be prosecuted if she told anyone what he had done.

In the month of July, 1913, Belle Shaffer informed her mother and brother Louie of defendant's crime, and her brother took her to the prosecuting attorney's office and procured a warrant for defendant. There was evidence that Belle Shaffer was afflicted with melancholy about five or six months after the commission of the alleged crime upon her by defendant, and that she acted as though she was losing her mind, but this evidence was withdrawn from the jury by instruction. There is no evidence that defendant and Belle Shaffer were ever seen together outside the jewelry store, except on one occasion when defendant accompanied her and his wife to a store and purchased each of them a coat. It does not clearly appear who paid for the coats. Belle Shaffer further testified that she did not know that defendant was married; that in speaking to her about his wife he referred to his wife as his housekeeper.

Defendant, testifying in his own behalf, denied the crime, and denied that he ever attempted to wrong Belle Shaffer in any manner. He stated that Belle Shaffer knew that he was a married man when she was working in her brother's store; that she sent his wife a box of candy in which there was a card directed to her as Mrs. Wellman. He also introduced a certificate showing that he was duly married in Clay county, Missouri, in August, 1911, to Mrs. Mary Hull, the woman with whom he was living in January, 1913. Defendant also denied that he had committed adultery with his wife before they were married, but he admitted that she was a partner with him in his rooming house before their marriage. He also testified that he took her to Hot Springs, Arkansas, when she was sick before they were married, and stated that they stopped at different hotels, and he sustained no improper relations with her. Defendant also introduced one Ida Sours, a chambermaid who worked in his rooming house. She testified that immediately after defendant's arrest

Louie Shaffer came to see her and told her, in substance, that if defendant would "come across" with a few hundred dollars the case could be settled out of court, otherwise, defendant would have to stay in jail. That he (Shaffer) was broke and needed some money. It appears by other evidence that Louis Shaffer did go into bankruptcy in the month of January, 1913. Two witnesses testified that defendant's general reputation for morality was bad; two others testified that it was good.

In rebuttal Louie Shaffer admitted that he called on Ida Sours, but denied that he told her that the case could be settled for a money consideration. He stated that he called on Ida Sours to see if he could secure her evidence as a witness for the State, and to learn from her the whereabouts of another witness.

Belle Shaffer was also recalled and denied sending the box of candy to defendant's wife.

The prosecuting attorney offered to prove by the records in the Juvenile court of Kansas City that prior to her marriage to defendant Mrs. Wellman's child was taken from her because she was living in adultery with defendant, but that evidence was rejected by the court.

I. For reversal defendant asserts that (1) the information does not charge the offense of which he was convicted; (2) that improper evidence was admitted; (3) that the court erred in its instructions to the jury; and (4) that the assistant prosecuting attorney made improper and prejudicial remarks to and in the hearing of the jury.

We shall first consider the error of the trial court in refusing to arrest the judgment on account of the alleged insufficiency of the information. The law which defendant is charged with violating is section 4726, Revised Statutes 1909, which, as amended by the Laws of 1911, p. 198, reads as follows:

"Every person who shall be convicted of the detestable and abominable crime against nature, committed with mankind or with beast, with the sexual organs or with the mouth, shall be punished by imprisonment in the penitentiary not less than two years."

The information, omitting caption, signature and verification, is as follows:

"Now comes Floyd E. Jacobs, First Assistant Prosecuting Attorney for the State of Missouri, in and for the body of the county of Jackson, and upon his oath informs the court that Joseph Wellman, whose Christian name in full is unknown to said First Assistant Prosecuting Attorney, late of the county aforesaid, on the —— day of January, 1912, at the county of Jackson, State of Missouri, did then and there unlawfully and feloniously commit the detestable and abominable crime against nature by then and there having sexual intercourse with one Belle Shaffer with his mouth; against the peace and dignity of the State."

Do the acts recited in the foregoing information constitute the detestable and abominable crime against nature? Some courts have said that this crime is so well understood that an indictment need not describe the acts by which it is committed. In Honselman v. People, 168 Ill. 172, l. c. 175, it was said:

"The Legislature has not seen fit to define it further than by the general term, and the records of the courts need not be defiled with the details of different acts which may go to constitute it."

The quoted language may be sound reasoning as applied to the crime as it existed at common law, but the General Assembly of Missouri added a material amendment to the law in 1911, extending the crime so that it may be committed with the mouth. It has been held in several jurisdictions that this latter method of committing the detestable crime against nature is not embraced in the general term of crime against nature. [Harvey v. State, 55 Tex. Crim. 199, and People v.

Boyle, 116 Cal. 658.] It is apparent that the General Assembly intended to expand the meaning of the words "detestable and abominable crime against nature" by the amendment of 1911, supra, and we are convinced that under this new statute it is necessary to designate, at least in a general way, the acts by which the crime is committed. It is to be regretted that the public records of our State should be contaminated with the details of such loathsome crimes, but it is difficult for the writer to bring himself to understand how section 22, article 2, Constitution of Missouri, prescribing that the accused may demand "the nature and cause of the accusation against him," can be materially modified or suspended. The criminal acts which a defendant is called upon to meet must be described with reasonable certainty. [State v. Murphy, 141 Mo. 267.]

The indictment in this case charges that defendant committed the detestable and abominable crime against nature '*by then and there having sexual intercourse with one Belle Shaffer* with his mouth." The words "sexual intercourse" have a well-defined meaning, both in law and common usage. They have been judicially defined to mean "the actual contact of the sexual organs of a man and a woman, and an actual penetration into the body of the latter." [35 Cyc. 1450; and State v. Frazier, 54 Kan. 1. c. 725.] We have searched in vain for other definitions of the words "sexual intercourse," and while we think they might reasonably be expanded to cover a lustful contact between the sexual organs of mankind with the sexual organs of beasts, accompanied by penetration, they cannot be held to embrace a contact between the sexual organs of one person and the nonsexual organs of another.

An examination of the information shows that it charges the defendant with committing the crime against nature by an ordinary act of coition in the natural way, and, of course, that part of the information is grossly repugnant to the main charge. We are aware

that under our criminal Statute of Jeofails, section 5115, Revised Statutes 1909, repugnant allegations in indictments may be rejected as surplusage, but the difficulty in rejecting the repugnant clause in this information, to-wit, "by then and there having sexual intercourse with one Belle Shaffer," is that the information would be left without the name or any description of the party upon whom the alleged crime was committed; so that the Statute of Jeofails cannot aid the State in sustaining this conviction.

The information in this case presents a similar situation to the one which arose in the case of State v. Leonard, 171 Mo. 622. In the Leonard case an attempt was made to charge the defendant with having in his possession a forged railroad ticket. The indictment showed on its face that the railroad ticket found in the possession of Leonard was not such a forged instrument as came within the purview of the statute, and it was held that the recital in the indictment of facts showing that a forgery had not been committed could not be rejected as surplusage. In that case the court, speaking through Fox, J., said:

"If the State admits in her pleading a state of facts which shows that the defendant cannot be convicted of the offense charged, then and in that case, he ought not to be put upon trial for such alleged offense. As an example, if the counsel representing the State should, when the case is called for trial, announce in open court that some material fact necessary to the conviction of the defendant does not in fact exist and he would be unable to prove it, would the court, upon this admission, put the defendant upon his trial, or would it suggest the dismissal of the case? . . . While it is discretionary with the court as to sustaining the motion to quash, there is one of three things it should have done. It should have, at the close of the State's case, instructed the jury that, under the indictment and evidence in this cause, they should find defendant not

guilty, or this instruction should have been given at the close of the entire case, or it should have sustained the motion in arrest of judgment.''

As this case must be remanded for a new trial, the information should be amended so as to conform to the evidence of the prosecutrix, by specifically charging that defendant unlawfully and feloniously committed the detestable and abominable crime against nature upon one Belle Shaffer, a female human being, by then and there inserting his mouth into the sexual organs and private parts of her, the said Belle Shaffer, against, etc.

II. The appellant's attorneys strenuously insist that the court erred in admitting improper evidence.

Objection to Evidence.

There was some improper evidence admitted, but the record shows that much of this improper testimony was only objected to after it was admitted; and as to some of it the defendant merely objected to its introduction without designating any reason why it should not be admitted. We have often announced the rule that the only proper way to secure the exclusion of evidence is by specific timely objection, pointing out the reasons why it should not be received. [State v. Pyles, 206 Mo. l. c. 632, and State v. Crone, 209 Mo. 316, l. c. 330.]

III. As the case must be remanded for a new trial, we will call attention to one erroneous view expressed by the trial court in regard to the evidence of Jacob Fromson. Fromson was asked if defendant had the

Other Crimes— Proof of by Rumor.

reputation of committing the class of crimes for which he was then on trial. The trial court ruled that this character of evidence was admissible, and announced that the Supreme Court had so construed the law. The cases of State v. Beckner, 194 Mo. 281; State v. Pollard, 174 Mo. 607, and State v. Shields, 13 Mo. 236, are cited by the Attorney-General as tending to sustain the views

of the trial judge above noted.  Those cases merely go to the extent of holding that the bad reputation of defendant for morality and chastity may be shown to discredit his testimony, notwithstanding he be on trial for violating some law which affects the public morals. Those cases also sustain the well-known proposition that evidence regarding the reputation of defendant must be confined to his general reputation for morality, and cannot single out his propensity or reputation for violating some particular law.

To sustain the view announced by the Honorable Trial Judge would lead to the admission of evidence of independent crimes not connected with the one for which a defendant is on trial and not tending to establish motive; and, would in effect, amount to trying him for crimes not designated in the indictment.  This would be a plain violation of section 22, article 2, of the Constitution.  [State v. Spray, 174 Mo. 569, and State v. Teeter, 239 Mo. 475.]  It is contended that the Kansas City Court of Appeals in the case of State v. Oliphant, 128 Mo. App. 252, announced a different rule, but in so far as the doctrine of that case is in conflict with this decision it is overruled.

There was throughout the trial a labored effort by the assistant prosecuting attorney to prove by rumor or common report that defendant had committed the crime against nature upon a woman by the name of Fromson, who was alive at the time of the trial but not called as a witness.  There was also an effort to prove by the same class of testimony that defendant had been guilty of the specific crime of adultery.  All this was improper.  Such evidence, in addition to being an effort to prove independent crimes not in any way connected with the offense for which defendant was on trial, was a plain violation of that part of the Constitution which ordains that a defendant has the right "to meet the witnesses against him face to face."  No one could meet a mere rumor face to face.  The only ex-

ception to this rule seems to be in the case of dying declarations.

These observations are made to point the way for the retrial of this case in accordance with the Constitution and laws of the State.

IV. In his brief appellant contends that the trial court erred in failing to instruct the jury that the prosecutrix must be corroborated. This **Corroboration of Prosecutrix.** upon the theory that she consented to the commission upon her of the crime against nature, if such crime was committed. This point is ruled against appellant because not specifically assigned in his motion for new trial. [State v. Conway, 241 Mo. 271; State v. Dockery, 243 Mo. l. c. 599; State v. Chissell, 245 Mo. l. c. 554-5; State v. Horton, 247 Mo. l. c. 663.]

V. This brings us to the alleged improper conduct of the assistant prosecuting attorney. **Improper Conduct of Prosecutor.** In his argument to the jury the following occurred:

"Is he the kind of a man that would do it? Did he come in here with a clean record, or does he come in here blackened, as he should be? A man who lived in adultery on Union Avenue!

"MR. GORDON: We object to that. There is no evidence of that.

"MR. CURTIN: I say that Dr. Mathis, the Juvenile Officer, told you what kind of a man he was. I say Fromson told you what kind of a man he was. What did Fromson base his opinion upon? The confession of his wife, who was then the daughter of this man.

"MR. GORDON: We object to the statement that the defendant and his wife lived in adultery. There is no evidence to that effect. Save our exception to the failure of the court to rule upon it.

"MR. CURTIN (continuing): Let us see if this man got this girl's confidence. She says she was working in her brother's store. This defendant was working there with her. He made love to her and told her he would marry her, although at that time he was living with a harlot—

"MR. OWEN: We object to that. There is no testimony—

"MR. CURTIN: I say there is, and I object to you butting in. I say the record of the juvenile court shows that this child was taken away from him because he was living with this woman in adultery—.

"THE COURT: His general reputation was admitted, but the other was withdrawn."

The record does not show that defendant lived in adultery with his wife, whose name was Mary Hull, before they were married. The State attempted to prove the charge of adultery by the record of a suit in the juvenile court, to which suit the defendant was not a party, but that evidence was excluded. The defendant denied having lived in adultery, and introduced a marriage record showing that he was lawfully married to his wife (the woman referred to by the prosecutor) about a year and a half before the date of the alleged crime upon Belle Shaffer.

The trial court having failed to rule upon the improper remarks of the prosecuting attorney in regard to the alleged adultery, he was emboldened to go still further out of the record and charged defendant *with living with a harlot at the very time he is accused of committing this abominable crime against nature.* There is not a word in the record showing any improper conduct on the part of Mrs. Wellman after her marriage to defendant in August, 1911. On the contrary, the record shows that they were living in lawful wedlock. The last remark brought a mild criticism from the trial judge, but no admonition to the prosecutor to confine himself to the record. The remarks be-

fore quoted were not warranted by the evidence, and were highly prejudicial to defendant.

During the trial of the case the assistant prosecutor, over defendant's protest, several times, denounced defendant's witness Ida Sours as a prostitute. Her reputation was not then in issue, and there was not the least excuse for the prosecutor's vitriolic epithets. After Ida Sours testified and her veracity and chastity might have been placed in issue, not one word of evidence was offered by the State to show that her reputation was bad in any respect. Yet, notwithstanding there was no evidence to throw discredit on her testimony, the prosecutor in his closing argument denounced her as a woman wholly unworthy of belief, and again insinuated that she was a prostitute. It is true that these latter remarks were not objected to, and we can disregard them if we choose, but they tend to establish the fact that the public prosecutor conducted this case without any regard to the rules of law or common fairness. Louie Shaffer testified that he caused this prosecution to be instituted, and stated that he called on Ida Sours, hoping he could secure her evidence for the State, but when it developed that her evidence was favorable to defendant she was at once denounced as wholly unworthy of belief. We regret to say that the record in this case and in the case of State v. Arthur Brown, 247 Mo. 715, tend to indicate that in Jackson county when any witness refuses to testify for the State he or she is promptly denounced as a criminal by the public prosecutors of that county, regardless of whether there is any evidence of wrongdoing on the part of such witness.

If the defendant had been duly convicted of the crime of adultery, and the record of his conviction had been admitted in evidence, he would have been entitled to an instruction to the effect that the jury could only consider his conviction as tending to discredit his testimony as a witness, and not as tending to prove him

guilty of the crime for which he was then on trial, and the public prosecutor could not legally have referred to the conviction of adultery as evidence of his guilt of the crime against nature. [State v. Phillips, 233 Mo. 299, l. c. 306; State v. Jones, 249 Mo. 80, l. c. 98; Taylor v. State, 50 Tex. Crim. 560; State v. McNamara, 212 Mo. 150, 12 Cyc. 415.] Such an argument would have been a mere invitation to the jury to disregard the law. Evidence of bad character on the part of defendant was not evidence of his guilt, but in this case was admitted solely to impeach and discredit his testimony as a witness. When he does not testify or otherwise place his reputation in issue, such evidence cannot be admitted. [State v. Beckner, 194 Mo. 281.] The prosecutor should never be allowed to appeal to the jury to convict the defendant because he has committed some other crime not in any way connected with the one for which he is being tried, or because his reputation is bad. A defendant who testifies in his own behalf in a criminal case occupies a dual role. In one role he is a witness, in the other a defendant. [State v. Beckner, 194 Mo. 281; State v. Phillips, 233 Mo. 299.]

The defendant is charged with a loathsome crime, but the courts should, nevertheless, accord him a fair trial according to the Constitution and usages of law.

Prosecutors should be zealous in their efforts to enforce the criminal laws, but this does not mean that they are either required or authorized to override the Constitution and thus become lawbreakers themselves in order to secure convictions.

For the misconduct of the assistant prosecuting attorney and the invalidity of the information the judgment is reversed and the cause remanded for a new trial. *Walker, J.,* concurs; *Faris, J.,* concurs in all of opinion except paragraph one, as to which he is *dubitante.*