STATE of Missouri, Plaintiff-Respondent,

v.

Donald E. PETTIJOHN,
Defendant-Appellant.

No. KCD 27949.

Missouri Court of Appeals,
Kansas City District.

Aug. 30, 1976.

Thomas M. Larson, Public Defender, Joyce C. Wolfe, Law Intern, Lee M. Nation, Asst. Public Defender, Kansas City, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

DIXON, Presiding Judge.

Defendant appeals from a judgment and sentence of twenty years imposed upon a jury verdict of guilty and fixing the punishment for the crime of sodomy. Upon defendant's claim that the jury should have been instructed on circumstantial evidence, the cause must be reversed and remanded for a new trial.

The nature of the assigned error compels a detailed factual recital. On September 13, 1974, Ronald R. Seaman, a Kansas City Policeman, noticed a car parked in a park area in Kansas City. As he approached the car, he saw that the car's engine was running, that all of the windows were up, and that its driver (the defendant) appeared to be asleep. His suspicion aroused, Seaman pulled his vehicle alongside the parked car, "shined" his spotlight in the window, and honked the horn. Because the defendant did not respond to these actions, Seaman got out of his patrol car, "went over and knocked on the window." The defendant still failed to respond. As he knocked on the window, Seaman saw the defendant's "penis out of his pants and a little girl with her mouth on his penis." The little girl was apparently asleep when the officer first saw her. She was wearing "a blue wrap-around skirt with red shorts; no shirt, no shoes." The driver's son was sleeping in the back seat of the car. The officer also discovered a bottle of whiskey, a knife, and a jar of Vaseline Petroleum Jelly in the car. The officer continued to knock on the window until the driver awoke. This took about three or four minutes.

Another police officer, Hammond, was exercising his police dog in the park when he received an "assistance call" from Seaman. Upon receiving, Hammond drove directly to the car Seaman was investigating. As he "pulled up" he saw "officer Seaman was just pulling Mr. Pettijohn out of the car and he had his fly unzipped and his penis was out and there was a little girl on the front seat. She was naked from the waist up." Despite vigorous efforts, the lawyers could not clarify the officer's testimony as to what "on" with relation to the actual position of the child was with relation to the defendant. The defendant's penis was limp. The entire testimony of the officer is such that an inference that the defendant was not aware of the child's activities is also possible. The child was asleep and the defendant was either asleep or passed out.

During the trial, the defense called defendant's wife (Cynthia's mother). She testified that she had twice caught her daughter engaging in similar acts of sodomy. The first time was with a 12 year old neighbor boy. The other incident involved defendant. According to Mrs. Pettijohn at the time of this second incident, defendant:

"got completely stoned and he went on to bed, so I let one of the girls on different

occasions, I would let the girls sleep with us, so Cindy got in bed with us to sleep, cause we had a water bed, so I let one of them sleep with us once in awhile, it was a thrill. And I woke up in the middle of the night and, well, he was still passed out but she was upside down in bed, down on him. So I took her out of bed and whipped her but I didn't think that punishing would do that much good and why should I punish her if she had a problem?"

When asked how Cynthia "learned how to do such things," Mrs. Pettijohn responded that her daughter either learned it from her or from her first husband.

When asked about her knowledge of the events on the night of September 13, Mrs. Pettijohn said that her husband had been drinking and was pretty "tight." He decided to go get another bottle before "the places closed." For some unexplained reason, he took his son, Lonnie, and his stepdaughter, Cynthia, with him.

The predicate upon which the ultimate issue concerning the giving of the circumstantial evidence instruction rests is contained in the defendant's first point and the State's answer thereto. In his first point, the defendant argues that the evidence which is set forth above, in the light most favorable to the verdict, is insufficient because it does not demonstrate the element of penetration. The State counters that point by arguing that nowhere in the Missouri statutes or in the Missouri case law is it required that penetration be proved.

The State approaches the problem as one being "*sui generis*" in Missouri and arguing that this court should declare that penetration should not be required for proof of the offense under Section 563.230. The State develops the argument by citing the Illinois and Georgia statutes which it asserts are "nearly identical." A comparison of the statutes involved demonstrates that they are quite dissimilar. Both the Illinois statute and the Georgia statute prohibit on the basis of *sexual contact* between the defendant and the pathic while the Missouri stat-ute defines the offense in common law terms.

Based upon these arguments concerning the sufficiency of the evidence, the parties approach the problem of the denial of the circumstantial evidence instruction upon the assumption that their positions with respect to the sufficiency of the evidence are correct.

■ Before passing to the issue of the instruction, it should be noted that the evidence in this case is sufficient to submit the issue of the defendant's guilt to the jury even if penetration is an integral part of the offense for the apparent reason that the evidence noted above gives rise to an *inference* that penetration had occurred between the defendant and the pathic.

Turning now to the issue of the necessity for an instruction with respect to circumstantial evidence, the State in its argument under that point assumes that penetration is not required and concedes, in effect, that if evidence of penetration is required that the essential element of penetration is not shown directly and that a circumstantial evidence instruction should have been given. Thus reduced to its essentials, the issue to be decided in this case is whether the proof of penetration is required in a case of this nature for, if it was, the refusal of the instruction tendered by the defendant with respect to circumstantial evidence would be error as the parties concede.

■ Although early writers on the English common law were reluctant to detail the elements of the "infamous crime against nature, committed either with man or beast," 4 Blackstone, Commentaries, 215; and 70 Am.Jur.2d Sodomy § 3 (1973), it is apparent that proof of the common law felony absolutely required evidence of some slight penetration by the male sex organ in other than a natural manner. 2 R. Anderson, Wharton's Criminal Law and Procedure § 752 (1957). At common law, the act of cunnilingus was not punished as sodomy, and the crime could not be perpetrated by two women. *Anderson, supra.* Moreover, "at common law commission of the crime required penetration *per anum,* and that

penetration *per os* did not constitute the offense." *State v. Morrison,* 25 N.J.Super. 534, 96 A.2d 723, 725 (1953).

■ Around 1835, the Missouri legislature enacted a sodomy statute declaring that "[E]very person who shall be convicted of the detestable and abominable crime against nature, committed with mankind, or with beast, shall be punished by imprisonment in the penitentiary not less than ten years." § 7 p. 206 RSMo 1835. Although occasionally subject to minor alterations, this rarely used statute, written in the language of the common law writers,[1] remained in force until 1911, when "the General Assembly . . . added a material amendment to the law in 1911, extending the crime so that it may be committed with the mouth." *State v. Wellman,* 253 Mo. 302, 161 S.W. 795, 797 (1913).

In *Wellman,* the court considered whether the act of cunnilingus was prohibited by the amended statute. After examining the amended statute, the court concluded, "It is apparent that the General Assembly intended to expand the meaning of the words 'detestable and abominable crime against nature' by the amendment of 1911." Without giving full definition to the expansion, the court found that it did include cunnilingus, but felt compelled to reverse and remand because the information improperly charged the defendant with the self-contradictory act of having *sexual intercourse* with the pathic with his mouth. In so holding, the court pointed out that the information would not have been fatally defective if it had charged the defendant with committing the "detestable and abominable crime against nature upon [the pathic] by then and there *inserting his mouth* into the sexual organs and private parts of her . . . ."

Three years later the court was faced with a pair of cases involving acts of fellatio arising out of the same incident: *State v. Katz,* 266 Mo. 493, 181 S.W. 425 (1916); and *State v. Pfeifer,* 267 Mo. 23, 183 S.W. 337 (1916). One evening in 1913, "the prosecutrix" and a male acquaintance were sitting on a bench in St. Louis' Benton Park, when they were suddenly accosted by three men. After falsely identifying themselves as police officers, the men seized the prosecutrix's male acquaintance under the guise of an arrest. Two of the men escorted him to one side of the park while the third took the prosecutrix to the other end of the park and "ravished her." After raping her, he next committed a classic act of sodomy by inserting his penis into her rectum. His two partners arrived and assaulted her in the same manner. The trio then took her to an abandoned brewery where they were joined by a fourth man. The four assaulted her again. At one point the fourth man "thrust his private male organ into her mouth."

The defendants contended that acts of fellatio charged as sodomy in the informations were not crimes within the meaning of the sodomy statute because penetration *per os* was not included in the common law definition of sodomy. Relying heavily on *Wellman, supra,* the court rejected this argument, concluding in *State v. Katz,* at 181 S.W. 426, that:

"It would serve no useful purpose to go into the conflicting holdings of other jurisdictions as to whether the act here charged was at common law included in the general terms 'crime against nature,' because, even were the negative of this proposition conceded, it would avail defendant nothing in view of our amended statute. In the statutes of this state it is written: 'Every person who shall be convicted of the detestable and abominable

1. As a general rule most jurisdictions designating the crime under the generic name "sodomy" or "the infamous crime against nature" apply the rule that when "a public offense has been declared by statute in the general terms of the common law, without more particular definition the courts will resort to the common law for the particular acts constituting the of-

fense," 70 Am.Jur.2d Sodomy § 3, p. 807 (1973), and limit the crime of sodomy to those acts proscribed at common law. This is apparently the reason that the St. Louis Court of Appeals in *Frazier v. Grob,* 194 Mo.App. 405, 183 S.W. 1083 (1916), resorts to the common law in outlining the development of the Missouri sodomy statute.

crime against nature, committed with mankind or with beast, *with the sexual organs or with the mouth,* shall be punished,' etc.—the words in italics having been added by amendment in 1911. Laws 1911, p. 198. The Legislature surely meant something by this amendment; and, if so, it evidently was to include certain acts against nature which the general common-law terms did not embrace, and the acts it had in mind it designated. The method denounced by the amendment, and employed in this case, is as much against nature, in the sense of being unnatural and against the order of nature, as sodomy, buggery, or any other unnatural copulation. The original statute gave no definition of the crime against nature, and it was unnecessary for the amendment, in order to embrace the act here charged, to more definitely define the act in contemplation than it did. As said in *Honselman v. People,* 168 Ill. loc. cit. 174, 48 N.E. 305:

" 'The statute gives no definition of the crime, which the law, with due regard to the sentiments of decent humanity, has always treated as one not fit to be named'

—and so with the amendment. Without lengthening the discussion of this loathsome subject, it is sufficient to say that the act here charged is within the statute, and that the information fully and sufficiently advised the defendant of the crime with which he was charged. *State v. Wellman,* 253 Mo. 302, 161 S.W. 795; *Means v. State,* 125 Wis. 650, 104 N.W.

815; *Honselman v. People,* 168 Ill. 172, 48 N.E. 304; *Kelly v. People,* 192 Ill. 119, 61 N.E. 425, 85 Am.St.Rep. 323."

As can be seen, after apparently first assuming that the prior sodomy statute was limited by the common law language to classic sodomy, buggery, or bestiality, the court concluded that the statute had been extended by the 1911 amendment to include similar acts committed with the mouth, and that fellatio and cunnilingus are such similar acts.

■ It is very important to note that a basic similarity between cunnilingus, fellatio (as the terms are "defined" in *Wellman* and *Katz* ) and the acts traditionally proscribed by the sodomy statute is penetration.[2] While, like Missouri, nearly all States have expanded the common law felony of sodomy to include the acts of fellatio and cunnilingus, only a few have gone so far as to hold that something less than at least a slight penetration[3] by either the mouth or the penis of a forbidden bodily cavity can amount to sodomy. 70 Am. Jur.2d, Sodomy, § 5 (1973). As one writer states, "In the absence of some usual statutory provision a conviction of sodomy cannot be sustained where evidence fails to show penetration although of course it might be sufficient for an attempt to commit the offense, or some other offense such as sexual assault." R. Perkins, Criminal Law, p. 391 (2d ed. 1969). Since Missouri's statute does not appear unusual and since no Missouri case has been found extending the crime of sodomy to acts requiring less

---

**2.** See *State v. Oswald,* 306 S.W.2d 559, 562 (Mo.1957) where the court in distinguishing § 563.230 from § 563.160 (the child molestation statute) indicated that "the term 'sodomy' is considered a sufficient general description of the offense; but § 563.230 *seemingly* embraces sodomy proper, bestiality, buggery, fellatio (oral genital contact), and cunnilingus (oral vaginal contact): that is, any unnatural corporeal copulation." The court's definitions of fellatio and cunnilingus are broader than the acts proscribed by Missouri cases. No Missouri case holds mere contact alone sufficient. In passing it must be noted that the court in this case drew a clear distinction between sodomy and child molestation, holding that in the prop-

er circumstances a defendant could be convicted of both simultaneously.

**3.** Penetration has been defined, in sodomy, as "the insertion of the glans or virile end of an organ into the mouth or rectum." 70 Am. Jur.2d, Sodomy § 5, p. 809 (1973). While at common law, penetration by the male sex organ *per anum* was required to prove sodomy, the Am.Jur. definition can include penetrations made by both male and female sex organs. There appears to be some confusion, however, as to what is inserted where. See *Wellman, supra,* where the court held that a proper information for cunnilingus required the document to refer to how the defendant inserted his mouth into the victim's "private parts."

than penetration, it most be concluded that Missouri still follows the common law rule requiring some proof of penetration. Support for this conclusion is found in the requirement of MAI–Cr 12.50 that the jury find "insertion" by the mouth or sexual organ into the forbidden bodily orifice, as well as Section 546.330 RSMo 1969 which declares that proof of actual penetration shall be sufficient to sustain an indictment for sodomy.

 If evidence of penetration is required, then it is clear, as the State concedes, that there is no direct evidence of penetration in the case at bar. Penetration or insertion, however, need not be proved by direct evidence. As in rape, penetration in sodomy can be proved by circumstantial evidence. *State v. Hamilton,* 304 Mo. 19, 263 S.W. 127 (1924). "Evidence of the condition, position, and proximity of the parties as testified to by eyewitnesses may afford sufficient evidence of penetration to support a charge of sodomy by cunnilingus, and evidence of penetration beyond the lips of the pathic is sufficient to show penetration supporting a charge of sexual perversion." 81 C.J.S. Sodomy § 5, p. 377 (1953).

Since under the circumstances of the case at bar there was no direct evidence of sodomy, the trial court was obligated to give such an instruction. Failing to give such an instruction, the trial court committed reversible error. *State v. Regazzi,* 379 S.W.2d 575, 578 (Mo.1964).

Defendant argues four other less significant "points" in his brief. First, he contends that there is a fatal variance between the information and the verdict directing instruction. Next, he argues that the trial court erred in failing to grant defendant a hearing on the issue of competency. Thirdly, he claims the trial court abused its discretion in failing to reprimand trial counsel as to argument. Since the case must be reversed on other grounds for the reasons outlined above and since none of the other grounds asserted will be likely to arise again as the parties are fully advised by the briefing, these issues need not be discussed.

Finally, the defendant asserts that § 563.-230 RSMo is void for vagueness and violates the due process clauses of both the United States and Missouri Constitutions. If such a claim is again asserted, the parties may well consult *Holdsworth v. Key,* 520 S.W.2d 637, 640 (Mo.App.1975), which makes it clear that the duty of this court is to follow the last controlling decision of the Supreme Court which in this instance, as the parties agree, is *State v. Crawford,* 478 S.W.2d 314 (Mo.1972), *appeal dismissed,* 409 U.S. 811, 93 S.Ct. 176, 34 L.Ed.2d 66 (1972).

Reversed and remanded for new trial.

All concur.