STATE of Missouri, Respondent,

v.

Waymon L. BOYINGTON, Appellant.

No. KCD 28236.

Missouri Court of Appeals,
Kansas City District.

Nov. 29, 1976.

Thomas M. Larson, Public Defender, Lee M. Nation, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., W. Mitchell Elliott, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

The jury returned a verdict finding defendant guilty of rape but not guilty of sodomy, and fixed punishment at 11 years which the trial court reduced to 6 years. Defendant presents three points on appeal: (1) that the trial court erred in accepting a verdict which is inherently contradictory; (2) that the trial court failed to give a mandatory instruction; and (3) that the admission of samples of defendant's handwriting was error because the exhibits were hearsay and not within the business records exception. None of these exceptions can be sustained.

The State's primary witness at trial was the alleged victim. She testified that when she returned home at approximately 10:30 p. m. after an evening of bowling, a man stopped her at gunpoint and forced her to get back into her car. She testified that they drove for approximately five minutes, whereupon he stopped the car, ordered her into the back seat and removed her clothes. She then testified that her assailant forced her to engage in unnatural acts and sexual intercourse with him. After a forced second repetition of the sodomy and the rape, the two talked for a few minutes and returned to prosecutrix's house where the man, whom she had discovered to be her neighbor, went inside with her. The two talked for approximately two hours, and then the prosecutrix went into the bedroom, locked the door, and telephoned the police. Defendant left during this time. During her direct examination, the prosecutrix identified a letter which defendant had written her from the Jackson County jail, imploring her not to press charges and offering her a car and $32,000 if she would refrain. The prosecution offered evidence of defendant's authorship of this letter in the form of testimony of a handwriting expert who identified defendant's signature by comparison with his signature on commissary slips signed by him in the County jail.

The defense asserted was consent. Defendant testified that he had become acquainted with the prosecutrix two or three months before the alleged rape. He testified that he had had sexual relations with her throughout that period of time and had always paid for the services rendered. On the evening in question, defendant testified that he spent approximately 4½ hours with the prosecutrix, during which time the two had sexual relations, and the prosecutrix asked remuneration in the amount of $25.00. Defendant said that he refused to pay her, whereupon she stated that she would call the police, which she did.

The defendant also called as a witness officer Michael E. Beard of the Kansas City, Missouri, Police Department, who had stopped defendant at approximately 10:00 o'clock on the evening in question, searched him, and found no weapons on his person. The only further defense evidence was the testimony of defendant's brother who testified that the prosecutrix had the reputation of being a prostitute. The State presented, in rebuttal, the testimony of a police officer who testified that the police files of known prostitutes included no mention of the prosecutrix.

I.

Defendant's first argument on this appeal is that when the jury concluded their

deliberations with a finding that he was guilty of rape, but not guilty of sodomy, they reached a verdict that was inherently inconsistent. The inconsistency claimed lies in the fact that the evidence of rape came from the testimony of the prosecutrix, and that the evidence of sodomy came from the same witness relating the same series of events. Defendant submits that the acquittal upon the charge of sodomy indicates the jury's doubts touching prosecutrix's credibility which therefore must also undermine her testimony with regard to the rape, resulting in a lack of substantial evidence to support the conviction.

The underlying premise of this argument, that the verdict on each count must be consistent with the other, does not accord with the case law. *State v. Amerson*, 518 S.W.2d 29, 33[5] (Mo.1975); *State v. Larkins*, 518 S.W.2d 131, 137[14] (Mo.App. 1974). Moreover, there is no inconsistency here between the conviction for rape and the acquittal on sodomy.

 Sodomy differs from rape in that the latter requires penetration of the victim's sexual organ, whereas the former requires penetration of either mouth or anus. In either case, penetration must be proved. *State v. Pettijohn*, 541 S.W.2d 74 (Mo.App. 1976). With respect to the rape, the prosecutrix testified positively that penetration did occur. On the other hand, her testimony as to the alleged sodomy can be interpreted as failing to show penetration. Although she testified that defendant demanded an act which would require penetration, yet her testimony of what actually occurred was that she "put my mouth on his penis." That description falls short of showing the requisite penetration. *State v. Pettijohn, supra.* Thus, the jury could reasonably refuse to find a commission of sodomy, without in the slightest way impugning its finding that defendant did commit rape.

## II.

 Defendant argues next that the trial court erred in failing to give a required instruction—MAI–CR 2.70—because that instruction is mandatory, whether requested or not, whenever separate counts are submitted to the jury for the determination of guilt. The omitted instruction, MAI–CR 2.70 reads:

"The defendant is charged with a separate offense in each Count submitted to you. Each offense and the evidence and law applicable to it should be considered separately. Any evidence which was or has been limited to one of the offenses charged or one purpose should not be considered by you as to another offense charged or for any other purpose.

"You may find the defendant guilty or not guilty on any or all of the Counts submitted against him (, or you may find him not guilty by reason of a mental disease or defect excluding responsibility).

"You should render a separate verdict as to each Count submitted against the defendant."

Instruction 2.70 is listed among those instructions which are required whether requested or not. The Note on Use No. 1 to that Instruction states:

"One of the group of instructions numbered from MAI–CR 2.70 to 2.77 inclusive should be read to the jury in every case immediately before MAI–CR 2.80 where multiple counts or multiple defendants are involved. These instructions are designed to make it clear that each defendant, each count and each offense submitted against each defendant must be considered separately. In addition, separate verdicts must be returned as to each defendant and as to each count directed to him unless offenses are submitted in the alternative in separate counts."

Further, Rule 20.02(e) of the Missouri Rules of Criminal Procedure states: "Giving or failing to give an instruction or verdict form in violation of this rule or any applicable Notes On Use shall constitute error, its prejudicial effect to be judicially determined." Clearly, it was error for the trial court to omit the required instruction; but it is the duty of this court to determine whether the error prejudiced the defendant,

having in mind that "any such error must be deemed prejudicial unless the contrary clearly appears." *State v. Billingsley*, 534 S.W.2d 484, 485[1] (Mo.App.1975).

In determining whether an instruction or omission of an instruction was prejudicial, all of the given instructions must be read and considered together. *State v. Sallee*, 436 S.W.2d 246, 252 (Mo. 1969). The trial court gave the jury separate verdict directing instructions on sodomy and rape, and each of the two instructions carried a tail directing acquittal if the jury did not find each of the elements beyond a reasonable doubt. Separate converse instructions were given to each verdict director. Also, the jury was given four verdict forms: guilty of rape, not guilty of rape, guilty of sodomy, not guilty of sodomy. Still further, the jury was given two additional verdict forms in case a verdict of guilty on either count were returned with the jury unable to agree on the punishment. Such facts in the case of *State v. Johnson*, 537 S.W.2d 816, 819 (Mo.App.1976), led the court to a conclusion that there had been no prejudice to the defendant.

Even more tellingly, in this case the jury obviously understood that they could find defendant guilty of one of the offenses and innocent of the other offense, because the jury in fact convicted defendant of rape but acquitted him of sodomy. Therefore, the purpose of MAI–CR 2.70, that is separate consideration of each offense, was accomplished in the case at bar beyond possibility of doubt and there could be no prejudice to defendant.

### III.

For his final point, defendant argues that jail commissary order slips, introduced to provide an example of defendant's signature, were not properly admissible into evidence. Defendant contends that the information contained on the slips was hearsay and the issue to be proved by their introduction did not fall within the parameters of the business records exception. The gist of the argument is that without these handwriting samples, the State's handwriting expert had no basis upon which to identify the signature to the letter received by the prosecutrix from the County Jail as being in defendant's handwriting.

The foundation for the admission of the commissary slips into evidence was laid by the testimony of Carol Shanahan, criminal records clerk in the Department of Corrections jail unit. She testified that she maintains direct supervision, control, custody and care over commissary records. Money which is deposited in an inmate's account may be withdrawn for commissary purposes upon the inmate's signing a commissary slip. The accuracy of the commissary slips is insured by a procedure in which, if there is any question, jail personnel go back and compare the signature on the commissary slip with that on the general ledger sheet, which is signed by the inmate when he is originally booked in. This signature comparison is the method by which jail personnel insure that the person whose account is being depleted is the person who ordered the goods as specified in the commissary slip. Ms. Shanahan testified that this is the regular course of business for every inmate and that the commissary slips in question were double checked for accuracy and honesty through the system just described.

Defendant admits that the commissary slips themselves are business records within the purview of the Missouri Business Record Act, §§ 490.660 to 490.690 (all statutory references in this opinion are to RSMo 1969). The thrust of his argument, however, is that the portion of each commissary slip bearing the signature should not have been admitted because there was no proof that the person who verified the authenticity of the signature was qualified to give such an opinion. In other words, the argument is that the commissary slips were not competent proof of what they were introduced to prove: a genuine example of defendant's signature. He also argues that because Ms. Shanahan was not the person who verified the signatures on the commissary slips, and there was no evidence as to precisely who had done so, the introduction of these exhibits was based on hearsay.

These objections are properly considered together because although they allege different legal consequences, they are premised upon the same claimed defect: that the source and the recorder of the information which was entered on the records was unknown and possibly unqualified.

 In order to qualify for admission in evidence under the Uniform Business Records as Evidence Law, which has been adopted in Missouri, "[a] record of an act, condition or event" must not only be "made in the regular course of business" but it also must be shown, to the satisfaction of the court, that "the sources of information, method and time of preparation were such as to justify its admission." § 490.680. Thus, for an item contained in a report to be admissible, "it must be based on the entrant's own observation or on information of others whose business duty it was to transmit it to the entrant." *Mucci v. Le-Monte*, 157 Conn. 566, 254 A.2d 879, 881 (1969). The commissary slips were verified and entered into the jail records by the jail personnel who also compared the signature to the genuine signature of the inmate on the general ledger sheet. Thus the commissary slips qualify so far as this requirement is concerned.

 As pointed out by defendant, another criterion developed by the courts to determine the admissibility of a business record relates to the qualifications of the person who made the record. If the content of the record could not have been testified to by the reporter had he been offered as a witness present in court, then that content will not be admitted into evidence as a part of a business record. See *Mucci v. LeMonte, supra*; *Loper v. Andrews*, 404 S.W.2d 300 (Tex.1966); *West v. Fidelity-Baltimore National Bank*, 219 Md. 258, 147 A.2d 859, 863 (1959). This requirement poses no barrier to admission of the records in question, however, because the member of the jail staff who accepted each commissary slip could have testified to the genuineness of defendant's signature thereon. No particular expertise is required in order to form an opinion of handwriting.

As stated in III Wigmore on Evidence § 708 at 40 (Chadbourn Rev.1970): "In theory any person able to read and write is sufficiently qualified, as to *expert capacity*, to form an opinion of handwriting . . . ." To the same effect: McCormick on Evidence § 221, at 547 (2d Ed. 1972). See also McCormick, § 224, which states that where a public office is the depository of official or private papers, proof that the document has come from that custody is usually accepted as sufficient authentication "if it appears that the official custodian has a public duty to verify the genuineness of the papers offered for record or deposit and to accept only the genuine." In this case the jail personnel in charge of making sure that the signatures on the commissary slips were genuine, relied not on memory but on comparison with an example of the inmate's signature.

 Defendant cites authority which establishes one further criterion for admissibility. The writing sought to be admitted as a business record must relate to a condition, act or event which is an integral part of the business activity. A writing which does not pertain to a matter "in which the business was a direct participant, but to some incident, circumstance, or activity outside that business," is not properly admissible as a part of the business record. *Standard Oil Co. of Calif. v. Moore*, 251 F.2d 188, 213 (9th Cir. 1958), cert. den. 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148; *Bisno v. United States*, 299 F.2d 711, 718 (9th Cir. 1962). It was important for the business purpose for which the commissary slips were kept that the signatures thereon be genuine. The failure to catch a forged signature would mean that the wrong account would be debited. Special comparison procedures were devised to insure the validity of signatures on the commissary slips.

 The Business Records as Evidence Statute vests considerable discretion in the trial court to pass upon the admissibility of documents. *Thomas v. Fred Weber Contractor, Inc.*, 498 S.W.2d 811, 813 (Mo.App.1973); *State v. Jones*, 518 S.W.2d

322, 325 (Mo.App.1975); *State v. Triplett*, 520 S.W.2d 166, 168 (Mo.App.1975). We cannot say that this discretion has been abused with regard to admission of the commissary slips into evidence in the case at bar. Under Section 490.640, a disputed writing may be compared with any writing proved genuine to the satisfaction of the judge. The fact that a collateral issue is raised concerning the genuineness of the signature offered for comparison does not bar its admission. The statute requires only that the judge be satisfied that the comparison signature is genuine, but the conclusion of the judge does not bind the jury whose duty it is to determine for themselves the weight to be accorded to the evidence. *State v. Pace*, 269 Mo. 681, 192 S.W. 428, 430–31 (1917). There was no bar to defendant offering counter evidence to show the commissary slips were not genuine, if the signatures were in fact forged. The treatment of the handwriting samples fully comported with Missouri law as did the admission of the sample as a part of a business record.

Affirmed.

All concur.