**STATE of Missouri, Respondent,**

v.

**Howard B. POLLARD, Appellant.**

**No. KCD 30274.**

Missouri Court of Appeals,
Western District.

Oct. 1, 1979.

Larry E. Tate, Williams, Reesman & Tate, Boonville, for appellant.

John D. Ashcroft, Atty. Gen., Brenda Farr Engel, Asst. Atty. Gen., Jefferson City, for respondent.

Before HIGGINS, Special Judge, Presiding, WELBORN, Special Judge and SWOFFORD, C. J.

SWOFFORD, Judge.

The appellant (defendant) was tried under an information substituted for an indictment, under the Second Offender Act for the offenses of Rape (Count I); Sodomy (Count II); and Armed Criminal Action (Count III). The trial court upon stipulation by counsel found that the Second Offender Act was applicable because of defendant's three previous felony convictions in the State of Illinois. After trial of the charges here involved before a jury, the defendant was found guilty on all three counts and was sentenced by the trial court to 25 years on Count I (Rape); 5 years on Count II (Sodomy); and 5 years on Count III (Armed Criminal Action), the sentences on Counts II and III to run concurrently with each other, but consecutively with the sentence on Count I, a total sentence of 30 years. This appeal followed.

Because of the points raised on this appeal it is not necessary to here detail the evidence in this record, except to the limited and sordid degree necessary to the resolution of those points as hereafter discussed. Suffice it here to state that it is undisputed that on July 8, 1977, the defendant was driving alone across the State of Kansas on Highway I–70 en route from Wyoming to Ohio; that at Abilene, Kansas he picked up a young lady named Margaret Cohen and

her boyfriend, Christopher Stubbins, who were hitchhiking from California to Washington, D.C.; and after a rather erratic drive across Kansas and western Missouri, punctuated by stops for food, beer and liquor for the defendant, they stopped at night at Boonville, Missouri in Cooper County where the defendant secured a room at the Rustic Acres Motel. It was in this motel room that the crimes charged against the defendant occurred according to the State's evidence. Cohen and Stubbins testified that the defendant produced a handgun, threatened both witnesses, and performed oral sodomy and rape upon Cohen. The defendant testified in his own behalf and categorically denied the conduct charged against him. His version was that after the three arrived at the motel and had showered, he left to go to a nearby liquor store and when he returned to the room, Cohen and Stubbins were gone and he did not see them again until his arrest the next morning.

The defendant's first allegation of error is directed to the giving of Instruction No. 7 directed to the Armed Criminal Action charge of Count III. His position is that the giving of Instruction No. 7 was error because it contained a definition of the term "rape", the underlying felony, and that definition was couched in different terms than Instruction No. 5, the verdict director on the rape charge, and was therefore confusing, misleading, unnecessary and unduly dwells upon the crime as already set forth in Instruction No. 5.

Instruction No. 5 is model MAI–CR 6.40 and no complaint is made as to its form or content. That instruction, in pertinent part, is in the following language:

"As to Count One, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the 9th day of July, 1977 * * * the defendant *inserted his sexual organ to any extent into the sexual organ of Margaret Diane Cohen*, and

Second, that he did so against her will and after he caused her to submit by threats which caused her to fear physical violence to herself, then you will find the defendant guilty under Count One of rape.

* * * "

(Emphasis added)

At the time Instruction No. 7, now under attack, was given in this case, there was no MAI–CR model for an instruction on Armed Criminal Action. Instruction No. 7 read in pertinent part:

"As to Count Three, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the 9th day of July, 1977, * * * the defendant committed the crime of rape as charged in Count One, and

Second, that the defendant committed that crime with the use of a dangerous or deadly weapon, namely a pistol, then you will find the defendant guilty under Count Three of armed criminal action.

* * * * * *

*'Rape' is sexual intercourse* with a female against her will and after causing her to submit by threats which caused her to fear physical violence to herself."

(Emphasis added)

The definition of "rape" clearly follows the language which is contained in the model MAI–CR 6.18 instruction covering felony murder which was the approved form for that crime, at the time of the submission of this case.

The defendant's position in the argument portion of his brief is that the term " * * * inserted his sexual organ to any extent into the sexual organ of Margaret Diane Cohen * * * " as used in Instruction No. 5, and the term "sexual intercourse" as in the definition of "rape" in Instruction No. 7 constituted definitions of rape in different terms likely to confuse and mislead the jury and were "ambiguous" and "equivocal".

The testimony of Margaret Cohen was positive and unequivocal that the defendant did in fact perform sexual intercourse and penetrated her under threats and by placing

her in fear by means of a handgun. The defendant denied this also without equivocation. Thus the issue of fact for the jury was whether these acts occurred, not the nature of the acts charged.

All of the instructions must be read and construed together, *State v. Tellis*, 310 S.W.2d 862, 865[4] (Mo.1958), and if they properly present the law of the case when so construed, no error results. *State v. Edmonson*, 371 S.W.2d 273, 276[8] (Mo. 1963). Instruction No. 5 and Instruction No. 7 properly presented the law on rape and armed criminal action under the evidence, and it is inconceivable that a competent jury of mature persons could be misled or confused by the terms of those instructions here under attack or prejudiced thereby. The defendant's conclusion as to the prejudicial impact of the instructions does not provide the basis for reversal. *State v. Perryman*, 487 S.W.2d 515, 518[7] (Mo.1972). The cases cited by defendant have been carefully reviewed and found not to be pertinent or controlling here. Point I is ruled against the defendant.

The defendant alleges error under Point II in the trial court's giving of Instruction No. 6, the verdict director on the charge of Sodomy (Count II). He asserts that this instruction uses terms that "are confusing, misleading and allowed the jury to speculate on what acts the instruction refers".

Point III raised by the defendant is that "The verdict of the jury went against the greater weight of the credible evidence in this case".

Both of these points fail to comply with Rule 84.04(d), but in the interest of final disposition of this case they will be considered and ruled together, since both in substance depend upon the same argument, *State v. Joplin*, 485 S.W.2d 473, 475[2] (Mo. App.1972). Defendant asserts error in both points upon the failure of proof of penetration during the sodomy charged.

Instruction No. 6 reads as follows:

"As to Count Two, if you find and believe from the evidence beyond a reasonable doubt that on or about the 9th day of July, 1977, * * * the defendant *inserted his mouth or tongue within the sexual organ of Margaret Diane Cohen*, then you will find the defendant guilty under Count II of sodomy.

* * * *"

(Emphasis added)

Both the common law and the majority rule in Missouri and other jurisdictions require that both the information or indictment and the evidence show some degree of penetration by either the penis or the mouth into a forbidden bodily cavity in order to support a conviction of sodomy. This rule is applicable to acts of cunnilingus as are involved in this case. In *State v. Wellman*, 253 Mo. 302, 161 S.W. 795 (1913) a conviction based upon such an act was reversed, upon other grounds. There, the information charged the defendant with having "sexual intercourse * * * with his mouth" with the pathic. Upon remand, the court directed that the information be amended to charge that the defendant was guilty of "inserting his mouth into the sexual organs and private parts" of the pathic. In *State v. Pettijohn*, 541 S.W.2d 74 (Mo. App.1976) this Court held that this state followed the requirement that some degree of penetration must be charged and some proof offered of penetration in a prosecution for sodomy, whether cunnilingus or fellatio. This Court ruled in *Pettijohn* that support for that conclusion is found in the model instruction MAI–CR 12.50 which hypothesizes the requirement of insertion and in Section 546.330 RSMo 1969 which uses the term "actual penetration", both applicable when this case was tried.[1]

In the case of *State v. Thompson*, 574 S.W.2d 432 (Mo.App.1977) the St. Louis District of this Court reached a somewhat different conclusion. In that case the court said, l.c. 434[3]:

---

1. It should be noted that under Missouri's new Criminal Code, § 566.060 and accompanying MAI–CR 20.08.1, effective 1/1/79, the requirement of insertion or penetration are omitted as an element of the offense.

"Despite suggestions in other cases to the contrary, *see, e. g. State v. Pettijohn, supra,* we do not interpret *Wellman* to require allegation and proof of penetration in the prosecution of the sodomy offense of cunnilingus. Cunnilingus is defined in Webster's Third New International Dictionary as 'stimulation of the vulva * * * with the lips or tongue'. *Because of the anatomy of the mouth and the female genitalia, we believe that any contact between the mouth or its component parts and the vulva is sufficient to constitute the offense of cunnilingus.*" (First emphasis the court's; other emphasis added)

While this Court, of course, does not agree with the *Thompson* court as to its conclusion that proof of penetration was not an essential element of the crime of cunnilingus by the law in Missouri as it then existed, that difference of viewpoint is unimportant for the disposition of this case.

The evidence in this case given by Margaret Cohen was as specific and convincing on this element as could ever be expected short of a parrot response that penetration had occurred. She testified on direct examination:

"Q. After he removed your jeans from you, what did he then do?

A. He said he was going to give me something that I never had before, then he opened up my legs and started licking at me.

\* \* \* \* \* \*

Q. After he opened your legs, what did he then do?

A. He pulled his head and he started just licking and sucking for a long time.

Q. Where was he licking and sucking?

A. On my vagina.

\* \* \* \* \* \*

Q. Do you have an estimation as to the period of time which he licked and sucked between your legs?

A. Ten, fifteen minutes."

On cross-examination she again stated that when defendant had forcibly removed her blue jeans "then he started licking at my vagina and sucking at me". Witness Stubbins corroborated the fact that defendant performed oral sex upon Cohen in his presence.

■■ Anyone even with the most basic or rudimentary knowledge of the human anatomy "of the mouth and the female genitalia" (*Thompson, supra*) would reach the reasonable (and indeed, inevitable) inference and conclusion from this account of the defendant's actions, if believed, without direct evidence that some degree of insertion or penetration by defendant's mouth or tongue occurred during the cunnilingus. Thus, the rules of *Wellman, Pettijohn* or *Thompson,* whichever view is adopted, were satisfied. It was not error to give Instruction No. 6 and it was supported by the evidence.

Defendant's Points II and III are ruled against him.

The judgment is affirmed.

All concur.