**STATE of Missouri, Respondent,**

v.

**Floyd ROBERSON, Appellant.**

**No. 21001.**

Missouri Court of Appeals,
Southern District,
Division Two.

March 21, 1997.

---

David L. Simpson, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Gregory Barnes, Assistant Attorney General, Jefferson City, for respondent.

CROW, Presiding Judge.

Floyd Roberson ("Defendant"), tried as a prior and persistent drug offender, §§ 195.275 [1] and 195.295, was found guilty by a jury of the class A felony of trafficking drugs in the second degree, § 195.223.3(2). The trial court imposed a 17–year prison sentence.

Defendant appeals, maintaining (1) the evidence was insufficient to support the verdict in that the drugs were found in a house "jointly possessed" by Defendant and Joann Watson, and (2) the trial court erred in overruling Defendant's objection to a question the prosecutor asked Joann Watson, which she answered by saying Defendant told her he "was an addict." We address those complaints in the order presented.

In determining whether the evidence was sufficient to support the verdict, we view the evidence in the light most favorable to the State and grant the State all reasonable inferences from the evidence. *State v. Grim*, 854 S.W.2d 403, 411[5] (Mo. banc 1993), *cert. denied*, 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). We disregard contrary inferences unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them. 854 S.W.2d at 411[5]. Viewing the evidence that way, we consider whether a reasonable juror could find each element of the crime beyond a reasonable doubt. *Id.*

So viewed, the evidence established that about 3:00 p.m., March 23, 1995, officers arrived at a house at 735 Kennedy Street in Hayti Heights with a search warrant for cocaine. The exterior doors were locked. Using a "battering ram," the officers forced the front door open and entered. No one was inside.

One officer, Stanfield, saw a "glass dish bowl ... porcelain type thing" atop a "microwave" in the kitchen. Inside the bowl was

---

1. References to statutes are to RSMo 1994.

"paper ... like tissue paper." Stanfield opened the paper and found 29 "rocks" of crack cocaine.

Stanfield also saw a "vitamin E bottle" on top of a "deep freeze" in the kitchen. He opened the bottle and found some larger rocks of crack cocaine.

The aggregate weight of the rocks was 12.44 grams.

While the search was underway, Joann Watson drove an automobile into the driveway. She was alone.

One of the officers, Pruitt, asked Watson why she was there. She said she was looking for Defendant.

Pruitt checked the keys on Watson's key ring. None fit the door lock.

Several items belonging to Watson were found in the house.

The State called Watson as a witness at Defendant's trial. She recounted she had lived with Defendant in a "boyfriend and girlfriend" relationship about five years.

On March 23, 1995, they were cohabiting at 735 Kennedy. They had "broken up" two or three weeks earlier, and she had resumed living there with him only three days before the search.

Watson told the jury she and Defendant left the house that morning (March 23) "[a]bout 9 or 10." The doors were locked. She had no key. She did not see Defendant again that day.

Before they left that morning, Watson cleaned off the microwave and straightened up the kitchen. There was nothing in the glass dish on the microwave. She did not see the vitamin E bottle. She avowed she had no crack cocaine at the house that date and saw none.

The prosecutor's questioning of Watson produced the exchange on which Defendant bases his second point. The dialogue:

"Q. Do you know whether he was using cocaine?

A. No, I odn't [sic].

Q. Well, what, what did Floyd tell you about his condition?

[Defendant's lawyer]: I'd object, that's vague.

THE COURT: Overruled.

Q. What did he tell you about his condition?

A. That he was an addict." [2]

Section 195.223.3, the statute Defendant was charged with violating, reads, in pertinent part:

"A person commits the crime of trafficking drugs in the second degree if ... he possesses ... more than two grams of a mixture or substance ... which contains cocaine base...."

In *State v. Barber*, 635 S.W.2d 342, 343–44[4] (Mo.1982), the court said:

"Exclusive control of the premises on which controlled substances are found raises an inference of possession and control of those substances. But if there is joint control of the premises, some further evidence is necessary to connect the accused with the drugs." (Citation omitted.)

Defendant's first point asserts the evidence established only that he shared the house at 735 Kennedy with Watson. Consequently, says Defendant, the evidence was insufficient to support a finding that he had exclusive control of the premises where Stanfield found the crack cocaine. Citing *State v. Nobles*, 699 S.W.2d 531 (Mo.App. E.D.1985), Defendant proclaims: "The mere fact that a defendant lives in a house where drugs are found is not sufficient to prove exclusive control when other people also live there."

We do not quarrel with that proposition as an abstract statement of law. However, the State emphasizes, and we agree, that there was further evidence connecting Defendant with the cocaine.

As reported earlier, Watson testified that when she and Defendant left the house (some five or six hours before the search) there was

---

2. Evidently, Watson's testimony did not chill Defendant's amour. In an affidavit in support of a motion for reduction of bond pending appeal, Defendant avowed: "If this Court provides the setting of reasonable bond on appeal, I will reside at [an address in Hayti] ... with my girlfriend, Joann Watson[.]"

no cocaine in the dish on top of the microwave and she did not see the vitamin E bottle in which Stanfield found the larger rocks of crack cocaine. Watson swore she had no cocaine in the house. The doors were locked when she and Defendant departed. Only Defendant had a key. The officers found the doors locked when they arrived. No one was inside.

■ We hold the jurors could have reasonably found from the evidence in the preceding paragraph that the cocaine was brought into the house after Watson left with Defendant. Inasmuch as only Defendant had a key, he had exclusive control over the house *during the brief time the cocaine was there.* Under *Barber,* Defendant's exclusive control raised an inference of possession and control of the cocaine. 635 S.W.2d at 343[4]. Defendant presented no evidence contrary to that inference.

The cases relied on by Defendant are factually different from the instant case. Defendant acknowledges that in those cases, the accused "was found in a residence with others where various amounts of controlled substances were found." Here, no one (except the officers) was present when the cocaine was found, and the jurors could have reasonably concluded that Defendant had exclusive control of the house during the few hours that the cocaine was in it. Defendant's first point is denied.

The segment of Watson's testimony from which Defendant's second point arises is set forth earlier in this opinion. Defendant insists the trial court erred in overruling his lawyer's objection, to wit, "I'd object, that's vague," in that "the question was vague and overly broad and Joann's answer that Floyd 'was an addict' was inadmissible evidence of Floyd's bad character in that the probative value of the evidence of Floyd's addition was outweighed by its prejudicial effect."

The State argues that Defendant did not preserve the point for review inasmuch as the objection at trial did not alert the trial court that the question called for evidence of bad character, and after Watson's answer Defendant's lawyer did not complain that the answer "constituted proof of bad character or prior bad acts."

■ We agree with the State that Defendant's second point is not preserved. A point on appeal regarding admissibility of evidence must be based on the theory of the objection made at trial. *State v. Lang,* 515 S.W.2d 507, 511[8] (Mo.1974). That is, an accused is not permitted on appeal to broaden the objection he presented to the trial court; he may not rely on a theory different than the one offered at trial. *State v. Dampier,* 862 S.W.2d 366, 376[14] (Mo.App. S.D.1993).

The bare assertion of relevancy as an objection has been held insufficient to preserve for review a claim of error that a witness' testimony constituted improper evidence of other crimes. *State v. Ellis,* 853 S.W.2d 440, 445[8] (Mo.App. E.D.1993). Similarly, a hearsay objection has been held insufficient to preserve for review a claim of error that a witness' testimony amounted to evidence of a prior crime. *State v. Woods,* 723 S.W.2d 488, 496 (Mo.App. S.D.1986). In the same vein, *State v. Brown,* 752 S.W.2d 382, 384[5] (Mo.App. E.D.1988), held an accused who objected at trial that an answer was not responsive to the question could not complain on appeal that the answer constituted evidence of a murder victim's good character.

■ In harmony with the cases in the preceding paragraph, we hold the objection by Defendant's lawyer that the question to Watson was "vague" did not preserve for review Defendant's claim that Watson's answer constituted inadmissible evidence of Defendant's bad character.

Apparently recognizing the preservation hurdle, Defendant's brief requests plain error review under Rule 30.20, Missouri Rules of Criminal Procedure (1997), in the event we hold he did not preserve his second point. Rule 30.20 provides that plain errors affecting substantial rights may be considered in the discretion of an appellate court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom. *State v. Parker,* 856 S.W.2d 331, 332–33[2] (Mo. banc 1993).

In *State v. Corona,* 849 S.W.2d 274 (Mo. App. S.D.1993), the accused was convicted by jury of sale of a controlled substance. *Id.* at

275. On appeal, he requested plain error review of the trial court's failure to declare a mistrial, *sua sponte*, when the prosecutor questioned him about his prior drug use and he admitted such use. *Id.* at 277.

This court found no manifest injustice or miscarriage of justice, as the accused's admission that he used drugs would arguably show his motive to sell them, i.e., to get money or drugs to support his habit. *Id.* at 278. Although this court characterized the admissibility issue as "close," the court denied plain error relief. *Id.*

 Consistent with *Corona*, we hold Watson's testimony that Defendant told her he was an addict would arguably show he had a motive to traffick in drugs, hence such evidence did not result in manifest injustice or a miscarriage of justice.

Judgment affirmed.

SHRUM, J., and MONTGOMERY, C.J., concur.