STATE of Missouri, Plaintiff–
Respondent,

v.

Larry J. BULLOCK, Defendant–
Appellant.

No. 26650.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 15, 2005.

tially comply with Rule 84.04 preserves noth-
ing for appellate review." *Burton v. Tucker,* 937 S.W.2d 775, 776 (Mo.App. S.D.1997).

Gary Brotherton, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Karen L. Kramer, Assistant Attorney General, Jefferson City, MO, for respondent.

JAMES K. PREWITT, Presiding Judge.

Following a jury trial, Larry J. Bullock ("Appellant") appeals his conviction on two counts of statutory sodomy in the first degree, pursuant to § 566.062, RSMo 2000, for which he received two consecutive twenty-year terms of imprisonment.

We view the evidence in the light most favorable to the verdict. *State v. Crawford*, 32 S.W.3d 201, 204 (Mo.App.2000). Between the second week of May of 2001 and May 29, 2001, Appellant lived with his cousin, Sheila Cassidy, in Carthage, Missouri. Cassidy lived there with her daughter, S.K., born March 10, 1994, and a son. During this time, Appellant allegedly rubbed baby oil on S.K.'s body and licked her vagina.

Cassidy is also the natural mother of C.K., born September 25, 1995, who lived with her father, Victor Libeer, and adoptive mother, Kathy Libeer, in Blue Springs, Missouri. On May 18, 2001, Cassidy and Appellant picked up C.K. in Blue Springs for her bi-monthly visit to Carthage. During this weekend visit, Appellant allegedly put baby oil over C.K.'s body and touched her vagina with his hand.

On May 31, 2001, the day scheduled for C.K.'s next visitation with her mother, C.K. told Kathy Libeer that she did not want to go and made allegations against Appellant. A complaint was filed on September 10, 2002, and the State charged Appellant with two counts of statutory sodomy. At the trial beginning September 17, 2004, Appellant denied all allegations. The jury found Appellant guilty on both counts. Appellant waived jury sentencing, and the trial court sentenced Appellant on November 4, 2004. Appellant filed his Notice of Appeal on November 10, 2004.

■ In his first point, Appellant contends that the trial court erred in overruling his motion for judgment of acquittal, as the evidence proved only that Appellant "licked [S.K.'s] vagina, and no rational trier of fact could have found beyond a reasonable doubt that he inserted his tongue."

Our review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found Appellant guilty beyond a reasonable doubt. *State v. Love*, 88 S.W.3d 511, 514 (Mo.App.2002). "We disregard contrary inferences unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them." *State v. Roberson*, 941 S.W.2d 7, 8 (Mo.App.1997).

■ Section 566.062.1, RSMo 2000 states that "[a] person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old." "Deviate sexual intercourse" is defined as:

[A]ny act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person;

Section 566.010(1), RSMo 2000.

Appellant maintains that no evidence of this form of statutory sodomy was offered at trial. At trial, S.K. testified that Appellant touched her with his tongue. During a videotaped interview, S.K. said Appellant licked her "where she went to the bathroom." After showing the videotaped interview, Jeannie Stuart, an employee of the Division of Family Services ("DFS") and who interviewed S.K., testified that S.K. indicated on a diagram that Appellant touched her vagina. During closing arguments, the State said:

[S.K.] sat right there and told you that [Appellant] licked her vagina, her private area, with his tongue. No reason for him to be there. No reason whatsoever to be there. No health issues, no

reason. The only reason he was there was for his own sexual gratification. The definition we've already talked about.

Was that sexual deviant intercourse? Of course it was, based on that definition I read to you a moment ago. It's the exact same definition as on the other instruction. Tongue, on the second line there towards (sic) the far right, tongue or—you know, he's putting his tongue on her sex organ, her vagina. . . .

Appellant asserts that licking a vagina is not the same thing as inserting a tongue into a vagina in the context of deviate sexual intercourse. In *State v. Elder*, 36 S.W.3d 817 (Mo.App.2001), this District considered the definition of "deviate sexual intercourse" as found in § 566.010(1), RSMo 1994. There, the defendant admitted that he touched his tongue to the vagina of the victim who was under the age of fourteen for the purpose of sexual gratification but that such an act did not constitute deviate sexual intercourse. *Id.* at 818, 820. This District determined that licking a victim's vagina was deviate sexual intercourse for the offenses of sodomy and statutory sodomy in the first degree. *Id.* at 820–821.

In *State v. Pollard*, 588 S.W.2d 212 (Mo.App.1979), the offenses with which the defendant was charged included sodomy. On appeal, defendant alleged error in that the State failed to offer proof of penetration in its prosecution for sodomy when the jury had been instructed that penetration was an essential element in finding defendant guilty of the offense. The Western District cited the victim's testimony, which it found to be "as specific and convincing on this element [of sodomy] as could ever be expected short of a parrot response that penetration had occurred." *Id.* at 215. There, the victim testified as follows:

Q. After he removed your jeans from you, what did he then do?

A. He said he was going to give me something that I never had before, then he opened up my legs and started licking at me.

Q. After he opened your legs, what did he then do?

A. He pulled his head and he started just licking and sucking for a long time.

Q. Where was he licking and sucking?

A. On my vagina.

*Id.*

" 'Cunnilingus' " is defined in Webster's Third New International Dictionary as "stimulation of the vulva with the lips or tongue." *Pollard,* 588 S.W.2d at 215 (quoting *State v. Thompson,* 574 S.W.2d 432, 434 (Mo.App.1977)). "Because of the anatomy of the mouth and the female genitalia, we believe that any contact between the mouth or its component parts and the vulva is sufficient to constitute the offense of cunnilingus." *Id.* The Western District concluded:

> Anyone even with the most basic or rudimentary knowledge of the human anatomy "of the mouth and the female genitalia" (*Thompson,* supra) would reach the reasonable (and indeed, inevitable) inference and conclusion from this account of the defendant's actions, if believed, without direct evidence that some degree of insertion or penetration by defendant's mouth or tongue occurred during the cunnilingus.

*Pollard,* at 215.

We conclude that the act of licking the female genitalia fits the definition of "deviate sexual intercourse." Furthermore, Appellant incorrectly states in this point that he was charged with inserting his tongue into S.K.'s vagina. The information actually charges that "[Appellant] had deviate sexual intercourse with [S.K.], who was then less than twelve years old." However, Jury Instruction No. 8 instructs the jury to find Appellant guilty under Count II of statutory sodomy in the first degree if it is believed that Appellant "inserted his tongue into [S.K.'s] vagina[.]" The language requiring the jury to find that Appellant "inserted his tongue into [S.K.'s] vagina" was immaterial and constituted mere surplusage which amounted to the assumption of an unnecessary burden by the State. *See State v. Perkins,* 831 S.W.2d 637, 640 (Mo.App.1992). A sufficient level of evidence was presented so that a reasonable fact finder could conclude Appellant had committed statutory sodomy. Point one is denied.

■ In his second point, Appellant maintains that the trial court abused its discretion in overruling his objection to what Appellant contends was an attempt by the State to extract from the venire a commitment to find Appellant guilty. During *voir dire,* the State asked: "Does anyone believe it's okay for an adult to have sexual relations or sexual intercourse with a person who's less than [twelve] years old?" Appellant's counsel objected, maintaining the State was trying to get a commitment from the panel. The trial court determined that the question was permissible as long as it centered only on matters of conscience presented by the issue and overruled the objection.

■ "[T]he trial judge is vested with the discretion to judge the appropriateness of specific questions and is generally vested with wide discretion in the conduct of *voir dire.*" *State v. Oates,* 12 S.W.3d 307, 310 (Mo.banc 2000). An appellate court will find reversible error only where an abuse of discretion is found and the defendant can demonstrate prejudice. *State v. Womack,* 967 S.W.2d 300, 303 (Mo.App. 1998).

"It is reversible error for an attorney during voir dire to attempt to obtain from the venire a commitment or a pledge to act in a specific way if certain facts are elicited or certain contingencies arise at trial." *State v. Crew*, 803 S.W.2d 669, 669 (Mo.App.1991). "[C]ounsel may probe the venire to determine preconceived prejudices that would prevent the jurors from following the court's instructions." *Id.*

Appellant relies on the holding in *State v. Kiner*, 441 S.W.2d 720, 722 (Mo.banc 1969), that this was not a legitimate *voir dire* inquiry: "And if after hearing all the testimony as it comes from the witness stand and the Judge's instructions on the law, if the state proves to you beyond a reasonable doubt as to the guilt of the defendant, is there any reason you could not and would not vote to find him guilty?" *Id.*

But the question we examine is more akin to the question at issue in *State v. Crawford*, 904 S.W.2d 402, 408 (Mo.App. 1995), where the prosecutor indicated during *voir dire* that there would be evidence at trial that one of the victims stole something. The prosecutor then asked the venire whether anyone believed "that if a person steals something he should be put to death." *Id.* The Eastern District found that "the prosecutor was merely attempting to elicit any potential sympathies the jurors may have for defendant" as "any positive responses might bear upon the juror's ability to follow the trial court's instructions." *Id.* The trial court did not abuse its discretion by overruling Appellant's objection. Point two has no merit.

In his remaining point, Appellant avers the trial court erred in admitting videotaped statements by C.K. and S.K. from interviews with DFS interviewer Jeannie Stuart, because this denied Appellant the opportunity for effective cross-examination. Our review of the trial court's decision to admit testimony concerning the interviewing of a victim is limited to a determination of whether the decision amounted to an abuse of discretion, and the trial court's decision will be affirmed unless there is no reasonable basis in the record for it. *State v. Sanders*, 126 S.W.3d 5, 13 (Mo.App.2003). The same standard of review governs our review of the trial court's decision to admit the victim's videotaped statements. *State v. Smith*, 136 S.W.3d 546, 550 (Mo.App. 2004).

Section 492.304, RSMo Cum.Supp. 2004 governs the admissibility of audiovisual recordings of children under the age of fourteen alleged to be the victim of an offense under chapter 566 and satisfies a defendant's right to confrontation. *State v. Mann*, 35 S.W.3d 913, 916 (Mo.App. 2001). "The statutory requirement that the child witness be available to testify at trial, under oath, and subject to the fact finder's observation of demeanor ... guarantees that right." *State v. Schaal*, 806 S.W.2d 659, 663 (Mo.banc 1991); *see also* § 492.304.2, RSMo 2004. This allows the jury "to judge the videotaped, recorded testimony for themselves; they do not receive it secondhand." *Schaal*, 806 S.W.2d at 663.

Both C.K. and S.K. testified in court before their videotaped interviews were admitted, and Appellant had the opportunity to cross-examine them. The trial court did not abuse its discretion by admitting the videotaped interviews. Point three has no merit.

The judgment is affirmed.

PARRISH and RAHMEYER, JJ., concur.