Larry J. BULLOCK, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. 28258.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 22, 2007.

Motion for Rehearing or Transfer to Supreme Court Denied Nov. 13, 2007.

Application for Transfer Denied
Dec. 18, 2007.

Melinda K. Pendergraph, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Karen L. Kramer, Assistant Attorney General, Jefferson City, MO, for Respondent.

WILLIAM C. CRAWFORD, Senior Judge.

Larry J. Bullock ("Bullock") appeals from an order denying his amended Rule 29.15 motion to set aside his convictions for two counts of statutory sodomy in the first degree under § 566.062.[1] This Court affirmed Bullock's convictions on direct appeal. *See State v. Bullock,* 179 S.W.3d 413 (Mo.App. S.D.2005). Thereafter, Bullock filed a timely motion for post-conviction relief pursuant to Rule 29.15. Counsel was appointed to represent Bullock, and an amended motion was filed. The amended motion charged that trial counsel was ineffective for the failure to object to certain evidence admitted at trial, and was ineffective for the failure to investigate

---

1. Unless otherwise indicated, statutory references are to RSMo (2000) and rule references are to Missouri Rules of Criminal Procedure (2006).

and call at trial certain witnesses. Furthermore, Bullock charged that appellate counsel was ineffective for his failure to assert certain trial court errors regarding the admissibility of hearsay statements and the allowance of leading questions. After conducting an evidentiary hearing, the motion court denied all aspects of the amended motion. Bullock contends that the rulings of the motion court were clearly erroneous and raised four points on appeal.

The evidence in the underlying trial revealed that between the second week of May 2001 and May 29, 2001, Bullock lived with his cousin, Sheila Cassidy ("Cassidy"), in Carthage, Missouri. Cassidy lived there with her daughter, S.K., born March 10, 1994, and three-year-old son, N.K. During this time, Bullock rubbed baby oil on S.K.'s body and licked her vagina.

Cassidy is also the natural mother of C.K., born September 25, 1995, who lived with her father, Victor Libeer, and adoptive mother, Kathy Libeer ("Libeer"),[2] in Blue Springs, Missouri. On May 18, 2001, Cassidy and Bullock picked up C.K. in Blue Springs for her bi-monthly visit to Carthage. During this visit, Bullock put baby oil over C.K.'s body and touched her vagina with his hand.

On May 31, 2001, the day scheduled for C.K.'s next visitation with Cassidy, C.K. told Libeer that she did not want to go and made allegations against Bullock. Libeer notified the authorities in Carthage, and the following day both S.K. and C.K. were taken to the Children's Center in Joplin, Missouri, and interviewed by Jasper County Division of Family Services worker Jeannie Frencken Stuart ("Stuart"). The interviews were audio taped and video-taped.

Thereafter, a felony information was filed charging Bullock with two counts of statutory sodomy. Bullock denied all the allegations.

After a jury trial, Bullock was found guilty of two counts of statutory sodomy in the first degree.[3] *Bullock*, 179 S.W.3d at 414. On November, 4, 2004, Bullock was sentenced to serve consecutive terms of twenty years in the Missouri Department of Corrections. Throughout the trial process he was represented by public defender Frank Tolen ("trial counsel").

Bullock appealed his convictions and was represented by retained counsel Gary Brotherton ("Brotherton"). *Id.* at 414. As points of error, Brotherton contended that: (1) a judgment of acquittal should have been granted by the trial court with regard to the count involving C.K. because the evidence presented by the State did not fit the statutory definition of "deviate sexual intercourse," and, therefore, no reasonable juror could find Bullock guilty of statutory sodomy in the first degree; (2) the trial court abused its discretion in overruling his objection to what was contended to be an attempt by the State to extract a commitment from the venire during voir dire to find Bullock guilty; and (3) the trial court erred in admitting video-taped statements by C.K. and S.K. from interviews with Stuart because this denied Bullock the opportunity for effective cross-examination. *Id.* at 414–417. This Court found no error and affirmed Bullock's convictions. *Id.* at 417.

In January 2006, Bullock filed his pro se motion for post-conviction relief. Counsel was appointed and amended the pro se motion and challenged *inter alia* trial counsel's ineffectiveness in failing to seek a

---

**2.** At the time of the offense, Libeer was C.K.'s step-mother, but later adopted her.

**3.** Bullock waived jury sentencing.

redaction of S.K's videotaped interview to exclude Bullock's alleged misconduct directed against N.K.; trial counsel's failure to call Tabby Compton ("Compton"), S.K's first grade teacher, who would have testified that Bullock attended a school activity in May 2001, but was never mean to her or other students; trial counsel's failure to object to S.K. and Libeer's hearsay testimony about C.K.'s allegations that Bullock put baby oil on her; and appellate counsel's failure to brief the error in allowing the prosecuting attorney to lead S.K. and C.K. during their direct examination at trial.

The motion court judge, who was also the trial court judge in the underlying criminal case, conducted an evidentiary hearing on Bullock's motion. Compton testified that she was S.K's first grade teacher and she remembered a school activity in May 2001 in which Bullock was present with S.K.; that he participated in activities; that he was not "mean" to S.K. or her; and that he otherwise conducted himself appropriately. She recalled being interviewed by someone from the public defender's office who took a statement from her, and, if she had been called to testify at trial, she would have testified consistent with her statement.

Three other witnesses testified at the evidentiary hearing. These witnesses identified themselves as friends of Bullock and, had they been called to testify at trial, they would have offered evidence of Bullock's good character and his appropriate behavior around their children. Bullock testified and verified that he had wanted these four individuals to testify and wanted Victor Haslet, his cousin, to testify that "[S.K.] was full of it."

Trial counsel also testified and gave his reasons, or lack thereof, for certain decisions he made at trial concerning certain witnesses to be called and certain decisions

he made regarding objections to evidence offered by the State. Those matters are more fully addressed below.

The motion court addressed all issues raised by the motion counsel in the amended motion and denied all relief sought. We affirm.

"Review of denial of relief under Rule 29.15 is limited to determining whether the motion court's findings and conclusions are clearly erroneous." *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006). "The motion court's findings are presumed correct." *Id.* "The motion court's disposition will only be disturbed if, after a review of the entire record, the reviewing court is left with the definite impression that a mistake has been made." *Id.; Cole v. State*, 223 S.W.3d 927, 931 (Mo.App. S.D. 2007).

It has been consistently held that a movant is entitled to post-conviction relief on a claim of ineffective assistance of counsel only if he shows by a preponderance of the evidence that (1) his counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances, and (2) his counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

To satisfy the first prong of the *Strickland* standard, Bullock must overcome a strong presumption that counsel provided competent representation by showing "that counsel's representation fell below an objective standard of reasonableness." *Worthington v. State*, 166 S.W.3d 566, 573 (Mo. banc 2005) (quoting *Deck v. State*, 68 S.W.3d 418, 425–26 (Mo. banc 2002)). "Reasonable choices of trial strategy, no matter how ill fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Id.* (quoting *Cole*

*v. State,* 152 S.W.3d 267, 270 (Mo. banc 2004)).

To satisfy the second prong of the *Strickland* standard Bullock must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Middleton v. State,* 103 S.W.3d 726, 733 (Mo. banc 2003)).

■ Bullock claims in his first point that the motion court clearly erred in denying the claim that trial counsel was ineffective for failing to seek a redaction of the videotaped interview of S.K. in which she repeatedly accused Bullock of physically abusing N.K. Bullock claims this failure on the part of trial counsel denied him a fair trial because it allowed evidence of uncharged crimes of physical abuse committed against a different person to come before the jury, and depicted Bullock as a mean person who terrorized these children and likely committed the charged offenses.

It is clear from a complete reading of the trial transcript that the trial court had viewed the entirety of the videotape made of both children. It is further clear that trial counsel vigorously objected, both at the pretrial hearing and at trial, to the videotape being viewed by the jury. At trial, the trial counsel reminded the trial court that there were issues "that were immaterial and irrelevant that are disclosed on this tape." The trial court overruled the objections of trial counsel.

At the pretrial conference, when the issue of the videotape was addressed for the first time, trial counsel disclosed to the trial court that the videotape included irrelevant evidence regarding treatment of N.K. The trial court had not viewed the videotape at that time, but suggested that the parties discuss whether portions could be redacted from the videotape. The trial court gratuitously suggested that the material about which the trial counsel was complaining was not, in his opinion, necessarily prejudicial, and the prosecuting attorney stated that he did not wish to redact or edit portions of the videotape for fear it would look like the parties were hiding something.

By the time the videotape was offered into evidence at trial, the trial court had viewed the videotape and knew exactly what portions the trial counsel was complaining to be objectionable. With all this information available to the trial court, with full knowledge of the contents of the videotape, he overruled trial counsel's objections to the videotape, which included the objection to what trial counsel considered irrelevant evidence.

Although Bullock now argues that the trial court was "willing" to redact the videotape, a clear reading of the transcript does not support that conclusion. At the pretrial hearing, before he had viewed the videotape in question, the trial court observed: "I would like to see you look at this thing and then talk to Prosecutor and see, on the assumption the Court would admit these things, if that sort of question, to the extent you think it's leading and suggestive, could be eliminated, as well as those things you think are irrelevant." At trial, prior to their admission, trial counsel renewed his objections to the videotape, specifically mentioning the "immaterial and irrelevant" evidence, and the trial court responded: "The Court has considered the objections both those raised today and those raised last week when this issue cropped up.... The objections to the use of the tape have been overruled.... The court will allow the playing of the video [ ] at this time."

There is no indication that, had trial counsel attempted to seek redactions of S.K.'s videotaped statement from the trial

court, over the objection of the prosecuting attorney, that the trial court would have granted the request. Without some evidence in the record that trial counsel would have been successful in seeking the trial court's order of a redaction of the videotape, trial counsel cannot be convicted of incompetence for his failure to do so.

Bullock maintains that the admission of this evidence through the videotape constituted prejudicial evidence because it was evidence of prior uncharged criminal acts of physical abuse committed against a different person designed to show that he was a mean person who terrorized these children and likely committed the charged offenses. While the evidence may arguably have been prejudicial, the statements of S.K. concerning the treatment of N.K. were legally and logically relevant to show part of the complete and coherent picture of Bullock's offense against S.K., and the trial court in its discretion found that the probative value of the evidence outweighed any prejudicial effect. *State v. Estes*, 166 S.W.3d 119, 121 (Mo.App. E.D.2005); *State v. Naasz*, 142 S.W.3d 869, 878 (Mo.App. S.D.2004). Point one is denied.

■ Bullock's second point charges that the motion court erred in denying his claim that trial counsel was incompetent for failing to call Compton to testify because she could have testified that he participated with S.K. in a school activity in the month of the charged crime and, contrary to the testimony of S.K., he was never mean to other students or her at this activity. Furthermore, she could have testified that at this event S.K. did not appear scared of Bullock. He claims that this evidence would have called S.K's credibility into question and would have shown

that she made false allegations against him.[4]

■ Although trial counsel could not verbalize a trial strategy for his decision not to call Compton as a witness, she had been investigated and had been subpoenaed to testify. While trial counsel could not recall why he ultimately decided not to call Compton as a witness, this does not overcome the strong presumption that counsel had a strategic reason for not calling her. Bullock has the burden to overcome the presumption that any omissions by counsel were sound trial strategy. *State v. Tokar*, 918 S.W.2d 753, 766 (Mo. banc 1996). Where, as here, trial counsel does not remember the reason for making a strategic decision, there is a failure to overcome the strong presumption that the decision was made as a part of a reasonable trial strategy. *Clark v. State*, 94 S.W.3d 455, 460 (Mo.App. S.D.2003). Point two is therefore denied.

■ Bullock's third point charges that the motion court erred in denying his claim of ineffective assistance of counsel for trial counsel failing to object to S.K.'s and Libeer's testimony that C.K. told them that he had put baby oil on her.

A complete reading of the trial transcript revealed that this subject was a matter of substantial interest, and this was an area in which there were some clear inconsistencies. Libeer testified that C.K. originally told her that she was wearing pajamas when he put baby oil on her. Later, C.K. claimed that Bullock had taken her clothes off before putting on the baby oil. Trial counsel testified at the evidentiary hearing as follows: "Our strategy was to show that these children's statements were not credible and not reliable,

---

4. The evidence of the school day activity was mentioned in S.K.'s videotaped statement discussed above. In the videotaped interview, S.K. claimed that Bullock was "mean" to her teacher and classmates. S.K. did not testify about this at trial.

the basis being that each of the children had made statements that changed from time to time in a relevant way." Bullock verified this strategy with his testimony at the evidentiary hearing:

Q: Kind of going into your petition. Part of your strategy to show inconsistent statements with the two children, is that right? You thought they had lied at times before?

A: All the time.

Q: Even including some of the taped statements, they were different from stories that their mother told, is that right?

A: They were all different. Every story they told was different.

As the motion court found, it is reasonable for trial counsel to not object to testimony which may call for a hearsay response in pursuit of the trial strategy of the defense. Trial counsel testified: "There was some strategy involved in allowing a certain amount of hearsay in, as far as the inconsistency in the statements that the children gave to the Children's Center interviewer, the police, and statements made to the mother." However, a full reading of the trial transcript reveals that when such questions were posed that fell out of that pursuit, trial counsel objected and bench conferences were conducted.

■ At the evidentiary hearing, motion counsel peppered trial counsel with quotations from the trial transcript, asking if certain questions were objectionable, what the objections to the questions should have been, and what the trial strategy was for not objecting to the particular questions. Trial counsel answered the questions and either explained the strategy or admitted that he could not remember his

particular strategy on certain questions. "Decisions about whether or when to make objections at trial are left to the judgment of counsel." *Helmig v. State*, 42 S.W.3d 658, 678 (Mo.App. E.D.2001). A determination as to whether counsel was ineffective is not determined by post-trial academic determinations that trial counsel could have successfully objected in a given number of instances. *Id.*

A full and fair reading of the trial transcript reveals that the selective failure to object to certain hearsay statements, particularly concerning the subject matter complained of in this point, was made in pursuit of legitimate trial strategy. Point three is denied.

■ Bullock's fourth point charges the motion court with error for denying his claim that trial counsel was ineffective for failing to object to leading questions to C.K. and S.K. on direct examination and for denying the claim that appellate counsel was ineffective for failing to raise the issue on direct appeal. In addition, appellate counsel is condemned for pursuing allegedly weaker issues on appeal instead of the supposed stronger issue of leading a child witness on direct examination.

With regard to the direct examination of C.K. at trial, a complete reading of the transcript reveals that trial counsel did object, repeatedly, and was consistently overruled. The trial court stated that given the age of the witness he would allow some latitude as to leading questions and granted trial counsel a continuing objection. It has not been demonstrated what more trial counsel could have done with regard to the questioning.

As to the questioning of S.K., it has not been demonstrated that any objection by trial counsel would have been successful.

The trial court found that it allowed the leading questions at trial because of the age of the children.[5] This was within the trial court's discretion, and it has not been demonstrated that the trial court abused its discretion. *See State v. Loazia,* 829 S.W.2d 558, 565 (Mo.App. E.D.1992) (prosecutor was allowed to use leading questions with twelve-year-old witness of sodomy to her friend).

 With regard to the claim against appellate counsel, there is no duty to raise every possible issue asserted in the motion for new trial on appeal. *Storey v. State,* 175 S.W.3d 116, 148 (Mo. banc 2005). Nor is there a duty to present non-frivolous issues where appellate counsel strategically decides to winnow out arguments in favor of other arguments. *Id.* "Relief from appellate ineffectiveness requires that the error not raised be 'so substantial as to amount to a manifest injustice or a miscarriage of justice.'" *Id.* (quoting *Moss v. State,* 10 S.W.3d 508, 514–15 (Mo. banc 2000)).

It has not been demonstrated that the failure of appellate counsel to brief the leading question issue resulted in a "manifest injustice or a miscarriage of justice." It should be noted that the only evidence to support the claim of ineffective assistance of appellate counsel on this point is a copy of the direct appeal brief filed by appellate counsel. The mere presentation of this brief does not demonstrate that appellate counsel did not have some strategic reason for failing to raise the claim in question on direct appeal. Point four is therefore denied.

The motion court did not clearly err in denying Movant's Rule 29.15 motion for post-conviction relief. The judgment is affirmed.

LYNCH, C.J., and RAHMEYER, J. concur.

---

5. At time of trial, C.K. was eight and one half years old and S.K. was ten years old.